Alright we'll wait a minute while the courtroom clears out. Don't take this personally Mr. Reagan. Case number four, I'm sorry Mr. Peterson, case number four is Christopher Reagan against City of Hammond, Indiana. We'll hear from Mr. Peterson. You've just lost most of your audience. Good morning Your Honor. May it please the court, my name is Jonathan Peterson and I'm appearing here today on behalf of the appellants Christopher Reagan and the Northwest Indiana Creative Investors Association Inc. which is also known as by the acronym NICIA. This is a dormant Commerce Clause challenge to the constitutionality of two sections of the City of Hammond Municipal Ordinance, section 150.015 and section 150.017. The standard review is de novo and the appellants request this court to reverse the district court and enter judgment in favor of my clients the appellants against the City of Hammond. So let me tell you right away Mr. Peterson, I am utterly baffled. I'll get to Judge Rovner in a minute. I'm utterly baffled as to how this can implicate the dormant or any other version of the Commerce Clause when this ordinance applies even to people who live in Hammond who happen to own a different property in Hammond that they use for rental purposes and they've got to do exactly the same things as your clients. I just don't see anything approaching a burden on interstate commerce or a distinction based on one state or another. Your Honor, the City of Hammond was very effective before the district court in looking to the use of property as a basis to justify these ordinances. But I'm looking at the people who own the property and I'm saying that a resident of Hammond, a resident of South Bend, a resident of Cook County, Illinois are all under the same regime and there's no in-state, out-of-state dimension to this. Well that's not entirely true, Your Honor. If you are a Hammond resident owner-occupant, you are not subject... Not an owner-occupant. You're a Hammond resident who owns an apartment building two blocks away or who rented out. You're subject to this ordinance. Understood, Your Honor, but this has an effect on the ownership of real estate in the City of Hammond as it relates to the national real estate market. If you own real estate in the City of Hammond, you're subject to this ordinance that says you have to be a building contractor. Only if you use that real estate commercially. Only if you use it commercially. But if you are an owner-occupant, you're not subject to this ordinance. Now how does that affect interstate commerce? It affects interstate commerce when the properties are being offered for sale or when you have parties coming in, Hammond residents versus out-of-state prospective buyers coming into looking to purchase these properties. It applies to everybody in I agree with your characterization of the market, but we'll save that point. Well, okay. For example, if you are a out-of-state owner of real estate, this ordinance applies to you. I want you to be an owner of real estate who lives in Gary, Indiana. Okay. If you are an owner of real estate who lives in Gary, Indiana and you own real estate in Hammond, you are subject to this ordinance. If you want to do repair and remodeling on your property, which is an attribute of ownership, you have to become a licensed contractor to do that. Or, alternatively, you have to hire a Hammond licensed contractor to do that work. Now, this is how it affects real estate, or this is how it affects interstate commerce. That burden of becoming a licensed contractor affects all out-of-state property owners. If you reside in your property as a Hammond resident, you're exempted from that. So, you don't incur the burdens of becoming licensed. Or, alternatively, if you don't like the bids that are being offered to you by Hammond licensed third-party contractors, you can do the work yourself. Do you have any concern that owner-occupied residential real estate is affected at all by what happens with what Hammond does for commercial real estate businesses, whether it's residential leasing, whether it's business leasing, whether it's manufacturing leasing? In terms of how these two ordinances... Do these markets interact at all? Is there an elasticity of demand that you can show? If the price of one goes up, does the price of the other go down? Your Honor, we're not talking about the price. We're talking about an attribute and a cost related to ownership. But you were trying to say these are all in the same market, and I'm trying to give you some rigorous market analysis. I understand. Let me give you a clear-cut example. We have a landlord who is an out-of-state landlord owning a rental property in Hammond. It's a single-family home. And then you have a Hammond owner- effectively an identical property. Those two properties are brought to the marketplace for sale. Over the life of ownership, the landlord is subjected to higher carrying costs if they have to do repair and remodeling. You know what else can happen, though? The landlord deducts the cost of those repairs from the income received for that piece of property, and the landlord gains a tax advantage. Is that also unconstitutional? We're not going there, Your Honor. Well, we are going there. It's one of the differences. I understand. But at the time of sale, that deduction is recaptured by an increased basis in the property. So it levels itself out when we are actually talking about sales. At the end of the day, the cost basis for ownership of property that's not favored by Hammond- in this case, my client's landlord's, but other forms of property- use- that cost basis is higher as a result of the imposition of this licensing burden upon my clients and others who are not using the property in the method that's favored by the city of Hammond. That represents the burden on interstate commerce. And the district court missed that. The district court focused on profit motive as a basis for determining that there is no competition between the favored and disfavored parties. They're in different markets. That's really what it boils down to. They're subject to different economic incentives. They have different economic burdens. And on top of that, they don't follow state lines. Your Honor, this is the distinction here, and this is important. The court is referring to the use of property. What the appellants are referring to is the investment in property. And the investment in property- the competition occurs when the investment is monetized through a sale. Building Commissioner Kirk Cook stated, a person who owns a home, particularly one that's a family home, is the largest single investment they'll probably ever make. Well, the competition doesn't come from the use. That's self-evident. Competition comes when the out-of-state property owner is competing with the favored Hammond resident who has enjoyed over the life of that Hammond resident's ownership a favorable cost basis for doing repair and remodeling on their property. That gives a distinct advantage to the Hammond resident. And as a result, that creates a burden on interstate commerce. Two equally situated persons, a Hammond resident and an out-of-state investor, coming in and looking at the same property. They approach it from a different perspective because the out-of-state property owner looks at this and recognizes, hey, I'm not going to be able to do repairs as cost-effectively as perhaps another one. I think it's important to observe the disparate impact here that this creates in the marketplace. By comparison, a neighboring community, Town of Munster, has a building contractor ordinance that does not focus on ownership. It focuses on persons that are in the business of providing contractor services. And it states, building contractor means a person established in the construction business who contracts with owners or occupants of property or buildings to construct, improve, repair, or remodel the premises. Here, Hammond has extended this ordinance to include property owners and as a result has burdened these property owners. My clients are merely asking this court to level the playing field. We're talking about investment in property, whether it's a single family home or, as your Honor, you pointed out, a duplex, a multiplex. In each of these instances, if the owner is a Hammond resident residing in that property, that owner has a costing advantage when it comes time to do repair and remodeling. And that represents a burden on interstate commerce that is a violation of the Dormant Commerce Clause. Furthermore, Hammond recognizes those burdens when it offers the justifications to support the disparate treatment between the favored and disfavored parties. They talk about general public safety. They talk about consumer protection. They talk about the general benefit of regulating contractors as reasons to support these two ordinances. But these ordinances, the appellants assert, do have an impact on interstate commerce because of the differential effect on cost between the favored and disfavored parties. Hammond really reveals what these ordinances are about when they offer as a justification that the exemption protects owner-occupants from the burden of obtaining a license for work on their own property. That's found at Docket Entry 39-5 at 5. That's their responses to interrogatories. As Building Commissioner Kirk Cook put it, those favored Hammond residents don't have to go through the hoops and jumps with anybody else. These ordinances are about, the exemption is about simple economic protectionism in favor of Hammond residents. We believe that for those reasons, this court should find against the city of Hammond, determine that there is an effect on interstate commerce, and reverse the district court and find in favor of my client. I see I've got approximately three minutes left. I can't answer questions, but I'd like to reserve time for rebuttal. Question, Judge Rovner? Hammond, as it is for one who lives in Chicago, both owners might prefer to make repairs themselves or to hire a contractor based in Chicago rather than Hammond. And I just don't see the discrimination against interstate commerce. Although you have certainly made a valiant try to convince us. Is that a question, Rovner? Do you wish me to respond to that? I'm not sure. I think that it's been answered by you. You can think about further response for your rebuttal. Very good. Mr. Will? Thank you, Your Honor. Alexander Will on behalf of the city of Hammond. May it please the court, the city of Hammond's ordinances do not violate the Dormant Commerce Clause. There are several reasons for this, but chiefly, as the court has pointed out, this is because plaintiffs in this case are not similarly situated to individual homeowners who work on the homes in which they reside, and therefore the two groups cannot be compared. With this critical point in mind, the city's rational reasons for the ordinances justify their existence. As the court has noted, the Supreme Court has established any notion of discrimination assumes a comparison of substantially similar entities. And this concept extends to the Dormant Commerce Clause. This means in order for a Dormant Commerce Clause analysis to take place, there must be a threshold inquiry as to whether the two groups are appropriately comparable. In particular, if parties have different non-competitive products, if they have similar products that are sold in different markets, or if they are not in competition for some other reason, then the Dormant Commerce Clause is not implicated. Here the evidence establishes that resident homeowners who work only on their own homes are not competitive with landlords who repair or improve properties and then lease these to third parties. Simply put, it is a rational conclusion for the city to draw that the residential homeowners are probably making the largest single investment of their lives and improving their home for the benefit of themselves and those they love. So I understand the city also to be arguing that there's what I would call an agency problem. If you are a landlord making repairs or improvements or what have you on a property that you're using for commercial purposes, as opposed to an owner-occupier, namely the landlord is in it for the money. It's not a terrible thing. We have a capitalist system. You're fine. But they may not be perfect agents of the tenants. They may underinvest in those improvements. They may not have quite the skill set that the city would like them to have. So the city has a perceived greater need to regulate those who simply own the property and are renting. Sure. That's absolutely true. And that's especially true as the number of properties that may be leased increases. Certainly you can have an individual who has a home and then has a home that they rent. But this is far more likely to occur in situations where somebody has an apartment complex or multiple rental properties. And in those situations, the city has an interest in ensuring that the people that are making those repairs are aware of the code requirements and the specific code provisions at issue as they're making them over time. And they come in and they check on those things and make sure they're aware of them and are checked out. And that the people that are making those are of appropriate background. They don't have a fraudulent background. They don't have a background that may pose a risk to a tenant. Or, you know, this applies to general contractors generally as well to somebody who may be hiring a general contractor on their own. So I think all of this rests on- does give an advantage to contractors based in Hammond as opposed to contractors based elsewhere. Does that matter for purposes of the Dormant Commerce Clause? No, I don't think it does. So the question is that the advantage may be, as I'm interpreting it, the advantage may be that the contractor or landlord that is a resident of Hammond may have set up shop in Hammond and that they may already be licensed. Is that the question? And that is true. They may already have gone through the process. But the process is the same regardless. Whether you are from Cook County, whether you're from Lake County, whether you're from Marion County in Indianapolis, it's the same. When you get one of these licenses, are they good for multiple properties for a year? I mean, you don't have to get a separate license each time you get a project. Absolutely not. No, no. So there's some period of time it's good for? Yes. It's a license. I think the records show that they take the test. They are good for a year. And then at the end of the year, they simply just have to renew the license. They don't have to take the test again. They don't have to go to the contractor's board again or any of the other requirements. They don't have to do the criminal background check again. That's one time. No, it's done once. And then once it's done, it just can be renewed. And when somebody comes in with perhaps a permitted project, then at that point, they check to make sure the license is still valid. So it is good. Once it's good, it's good over time. And so if a landlord has an out-of-state contractor that they prefer, certainly they have to become licensed, as Judge Rogner pointed out. But then that contractor's free to do work on any of the landlord's properties over time, so long as that license is still good. Further, the court in this case, the district court recently assumed that homeowners would be driven to perform better workman-like work on improvements, realizing that they are assuming the risk on their home. But this was just one of the reasons that distinguished homeowners from landlords. The Appellant's counsel has pointed out that the sale is where he says the market comes into effect. However, there are a number of reasons to treat homeowners and residential homeowners different than landlords. The chief among them is that when you're buying a home, you're technically getting a mortgage, you're getting a large investment in money, and the ultimate goal of ownership, and that you live and own that home. In contrast, the landlord is renting the property, typically for a short period, typically over time, and the tenant is staying in for that time of the leasehold. These are rational reasons to treat the two separately. Second, the responsibility to maintain and repair a home falls upon the homeowner, whereas in the landlord situation, the landlord doesn't live there but still maintains a responsibility to repair. These are, again, rational reasons to treat the two differently. And as the court has pointed out, there's several reasons to do so under law. In fact, off the top of my head, the plaintiff's counsel cited to Indiana's landlord statute, which does precisely the same thing that the licensing statute, or licensing ordinance in this case, does, which is draw a rational distinction between landlords and resident homeowners. We do this in tax law, we do this in construction law, we do it all over the place at the local, state, and federal level. And if there is a market distinction here that violates the Dormant Commerce Clause, we're looking at raising a question of whether those other things become questionable in the Dormant Commerce Clause as well. With this framework in mind, the analysis shifts to rational basis review, and the ordinances pass rational basis review easily. As we pointed out, the city has established that general public safety is improved by ensuring contractors are aware of the code requirements. Second, the city has established the importance of consumer protection, making sure unscrupulous contractors are performing work for unwary tenants is a very reasonable and this has, again, an effect over time. If owners have multiple properties and multiple properties to which they're performing repairs, this ordinance requirement can have a profound impact on a short amount of time. Third, there's the general benefit of regulating contractors. Once the city has raised the bar for their contractors, they raise the bar for habitability conditions and improvements in the city of Hammond, and this benefits everyone, both Finally, there are individual justifications for the homeowner exemption. As we've discussed, homeowners accept the burden because they live in the home. It's just that simple. And then secondly, homeowners are distinct from residential landlords because they may only perform one project throughout the entire time that they've ever performed work. They may not need to know the entire code. They may not need to provide and memorize every single code provision in order to pass a test because they may only do, they only may fix one window or repair a siding on their home one time. For these reasons, we respectfully request that the court affirm the district court's grant of summary judgment and deny summary judgment to the plaintiffs. Unless there are any other questions. None. I see none. So thank you very much. Thank you. Mr. Peterson. Thank you. Again, the court challenged me, and I believe I've risen to the challenge. Again, the standard, the competition question is a gatekeeping question. And the district court relied on the holding in General Motors. But the district court focused on the wrong aspect of ownership. It focused on the use of these properties, whereas what we're talking about is an investment in real estate that is monetized when it is sold. And furthermore, the holding in General Motors stated the actual prospective competition between the supposedly favored and disfavored entities in a single market. Competition occurs over a period of time. It's not measured on Wall Street stock market standards. So out-of-state property owners purchase real estate in Hammond. We have Hammond resident owner occupants. They purchase the property. The Hammond resident owner occupants have the ability to do these repairs. And over time, their cost basis for identical property is less than what it is for out-of-state property owners. That is an impact on interstate commerce. And we believe that that's been conceded by the appellees here. They've acknowledged that sales is a form of competition. So because of that, the city has to introduce a rational basis for the favorable treatment it gives to its owner occupants. And all the reasons that they have been offered are reasons that would justify leveling the playing field and imposing those very same requirements upon all owners. General health and safety, consumer protection, these are all things that equally apply. Hammond speculates as to the number of times that an out-of-state property owner might do repairs on their property versus a Hammond owner resident. There is no evidence of that in the record. Again, we're talking about a disparate impact on interstate competition. And to the extent that the city of Hammond has been able to offer a rational basis for this, we don't believe that they have. And for all those reasons, we would urge this court to reverse the district court and enter judgment in favor of the appellants. Thank you. All right. Thanks very much. The court will take the case under advisement. Thanks as well to Mr. Will.